Andrew Baloga (OR Bar. No 245343)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6402
dbaloga@biologicaldiversity.org

Camila Cossío (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6427
ccossio@biologicaldiversity.org

*Attorneys for the Center for Biological Diversity*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. FISH AND WILDLIFE SERVICE; BRIAN NESVIK, in his official capacity as Director of the U.S. Fish and Wildlife Service; and DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior,<br><br>    Defendants. | Case No. 3:26-cv-1461<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

PAGE 1  –   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**INTRODUCTION**

1.      Plaintiff, the Center for Biological Diversity ("Center"), brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure: (1) to issue timely 12-month findings on the Center's petitions to list the Alvord chub, cinnamon juga, Donner und Blitzen pebblesnail, and Great Basin ramshorn; and (2) to issue a timely 90-day finding on the Center's petition to list the banded juga, in violation of the Endangered Species Act's ("ESA") nondiscretionary, congressionally mandated deadlines. The Service's failure to meet these deadlines delays crucial, lifesaving protections for these imperiled species, increasing their risk of extinction.

2.      The Center brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated the ESA by failing to timely issue the four 12-month findings and one 90-day finding for the five species in this Complaint, and directing the Service to issue these overdue rules and finding by a date certain.

**JURISDICTION**

3.      This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision), and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201–2202; and 5 U.S.C. § 706(2).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise the Center's claims occurred in this judicial district. All five species occur in this judicial district. Additionally, the majority of the Service's Regional and Field Offices responsible for issuing the untimely 12-month and 90-day findings are located in this judicial district.

5.      Divisional Venue is proper in the Portland Division pursuant to Local Rule 3-2(b) because a substantial part of the events and omissions giving rise to the Center's claims occurred in this Division.

PAGE 2   –   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**PARTIES**

6.      Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States. The Center has more than 101,000 active members throughout the country.

7.      The Center brings this action on behalf of its members who derive ecological, recreational, aesthetic, educational, scientific, professional, and other benefits from these species and their habitats. As a multitude of threats continue to push these five freshwater species dangerously close to extinction, the Center's members' interests in protecting and recovering these species and their habitats are directly harmed by the Service's failure to issue timely findings.

8.      Center member Kyle Roerink lives in Reno, Nevada, and is the Executive Director of the Great Basin Water Network. He regularly visits the Alvord chub's habitat in Virgin Creek on the Sheldon National Wildlife Refuge and in Bog Hot Creek, at least once or twice a year. Mr. Roerink makes these visits to Sheldon primarily for recreational purposes, to recreate with friends and family and enjoy the restorative and healthful properties of the geothermal waters, the intrinsic scenic values, and wildlife viewing. The Service's delay harms Mr. Roerink's recreational and aesthetic interests in the Alvord chub and its habitat by allowing further degradation of the waters the chub relies on and that Mr. Roerink specifically seeks out. The Service's delay also harms his professional interests as an advocate for the Great Basin. Mr. Roerink has dedicated his career to protecting the habitat and species of the Great Basin and the decline of the Alvord chub frustrates his efforts. Mr. Roerink has specific plans to return to the Sheldon Refuge this summer for recreational purposes and intends to search for the Alvord chub.

9.      Center member George Wuerthner is a biologist, conservationist, and adventurist with a particular interest in the snails of the Pacific Northwest. He regularly visits the single spring where the Donner und Blitzen pebblesnail occurs (Page Springs) in the Donner und

PAGE 3   –   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Blitzen drainage in Oregon. He has specific plans to return to Page Springs this summer to search for the pebblesnail. He also regularly visits the habitat of the Great Basin ramshorn and the cinnamon juga in the Upper Klamath Lake and the Upper Klamath River. Mr. Wuerthner has specific plans to return to the Upper Klamath Lake in September to fish and he intends to search for the Great Basin ramshorn. He also has specific plans to hike in the Cascade-Siskiyou region in October 2026. During that trip he intends to search for the cinnamon juga. Mr. Wuerthner lives near the lower Deschutes and recently spent time floating the river, which he does at least annually and intends to return in summer 2027 to float the river. During that visit he is planning to search for the banded juga and to assess its habitat in the lower Deschutes.

10.     Mr. Wuerthner has devoted much of his free time to learning about native snails in the Pacific Northwest and is inspired by wilderness pioneers who described early encounters with native snails. Mr. Wuerthner has worked on projects to conserve similar spring-dependent snails, has written about threats and the decline of native snails, and is particularly interested in the conservation of the Donner und Blitzen pebblesnail, Great Basin ramshorn, cinnamon juga, and the banded juga given their connection to the spring-fed waters and habitats that he seeks out. Mr. Wuerthner is harmed by the Service's delay in protecting these snails because the agency's delay increases pollution into the aquatic habitats that Mr. Wuerthner recreates in and their losses would frustrate his experience visiting these habitats. His interests are also harmed knowing there are simple ways to protect and mitigate harm to these species.

11.     Defendants' violations of the ESA's nondiscretionary, mandatory deadlines have delayed the ESA's protections for these five species, harming the Center's members' interests in them by decreasing the likelihood that these members will encounter the species as part of their personal and professional excursions. These injuries are actual, concrete injuries that the Center's members presently suffer as a direct result of Defendants' acts and omissions, and will continue unless this Court grants relief. The relief sought would redress these injuries by providing the five species with the protections of the ESA, thus promoting their conservation and recovery. The Center and its members have no other adequate remedy at law.

PAGE 4  –   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

12.     Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA for the five species. The Secretary of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

13.     Defendant BRIAN NESVIK is the Director of the Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Nesvik is sued in his official capacity.

14.     Defendant DOUG BURGUM is the Secretary of the U.S. Department of the Interior ("Secretary") and has the ultimate responsibility to administer and implement the provisions of the ESA. Defendant Burgum is sued in his official capacity.

**STATUTORY FRAMEWORK**

**The Endangered Species Act**

15.     The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

16.     The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. For example, Section 4(a)(3) of the ESA requires the Service to designate "critical habitat" for each endangered and threatened species. *Id.* § 1533(a)(3).

17.     In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* § 1536(a)(2).

PAGE 5  –   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

18.     Section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539; *see also id.* § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

19.     The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

20.     A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

21.     The ESA requires the Service to determine whether any species is endangered or threatened because of any of, or combination of, the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

22.     To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby interested persons may petition the Service to list a species as endangered or threatened. *Id.* § 1533(b)(3). In response, the Service must publish a series of three decisions according to statutory deadlines. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is known as the "90-day

PAGE 6  –   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

finding." If the Service finds in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

23.     If the Service determines that a petition presents substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

24.     Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

25.     If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and take public comments on the proposed listing rule. *Id.* § 1533(b)(3)(B)(ii).

26.     Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species. *Id.* § 1533(b)(6)(A). This is known as a "final listing rule."

**FACTUAL BACKGROUND**

**Alvord chub**

27.     The Alvord chub (*Siphateles alvordensis*) is a rare freshwater fish that only exists in the Alvord Basin, a desert valley that runs from southeastern Oregon through northwestern Nevada. Alvord chub live in the small number of ponds, streams, and wetlands that contain water year-round. Alvord chub were once considered widespread in the Alvord Basin, but populations have declined significantly. Threats to the chub include cattle grazing, water withdrawals, introduced species, and climate change. Many of the waters where chub live are located on public lands that the Bureau of Land Management lease to cattle owners for grazing. This

PAGE 7   –   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

grazing has destroyed streambanks, reduced water quality, and caused hotter and drier conditions. In addition to cattle grazing, Alvord chub habitat has been degraded by water diversions and is threatened by higher temperatures and extended periods of drought. Introduced fish also prey on the chub and compete with the species for resources. The chub's small, fragmented populations further threaten the species by increasing the risk of extirpation from catastrophic events or of losing evolutionary fitness to genetic drift.

**Cinnamon juga**

28. The cinnamon juga (*Juga canella*) is a freshwater snail found in a small number of streams in south-central Oregon and northern California. Cinnamon juga occur in the upper Klamath River watershed in Jackson County, Oregon, including sites in the Cascade-Siskiyou National Monument, and in approximately ten sites in springs and spring-fed creeks of northern California in the Shasta River watershed and adjacent parts of the upper Sacramento River watershed. The cinnamon juga and its freshwater habitat face threats from cattle grazing, water withdrawals, climate change, and small, isolated populations. Cinnamon juga are also threatened by logging, which increases water temperature and alters sedimentation, bacteria, and nutrient levels of the water, making affected areas unsuitable for the species. Additionally, the presence of railroad tracks and railroad-related chemical spills have degraded the cinnamon juga's habitat.

**Great Basin ramshorn**

29. The Great Basin ramshorn (*Helisoma newberryi*) is a freshwater snail that is imperiled in Oregon, California, and Wyoming and presumed extinct in its historic range in Idaho, Nevada, and Utah. Remaining populations occur in the Upper Klamath Lake and Pit River drainages in south-central Oregon and in northeastern California. Threats to the Great Basin ramshorn and its freshwater habitat include: logging activities that introduce excess nutrients and sedimentation; grazing that degrades stream banks, pollutes water quality, decreases water quantity; water diversions that destroy freshwater habitat; and risks associated with small, isolated populations. In particular, Jackson Lake has been modified several times for impoundment, harming the Great Basin ramshorn's habitat by increasing drying.

PAGE 8 – COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Donner und Blitzen pebblesnail**

30.    The Donner und Blitzen pebblesnail (*Fluminicola insolitus*), also known as the strange pebblesnail, is a freshwater snail that only occurs at a single spring (Page Springs) in the Donner und Blitzen drainage in Oregon. Donner und Blitzen pebblesnails are particularly threatened by recreation, as well as pollution, water-use, drought, and invasive species. The Page Springs campground is a popular recreational area, which exposes Donner und Blitzen pebblesnails to risks such as trampling and water quality degradation.

**Banded juga**

31.    The banded juga (*Juga newberryi*) is a freshwater snail that only occurs in the lower Deschutes River in Oregon. Its habitat requirements include cold, clean, well-oxygenated water with adequate flow rates. The Deschutes River was once known for these attributes but is now considered impaired under the Clean Water Act for several criteria that affect the banded juga. For example, the water is too warm and dissolved oxygen levels are too low. Banded juga are threatened by water quality and habitat degradation from dams, diversions, and agriculture. Remaining populations occur sporadically and are isolated from each other, putting them at greater risk of extinction.

**Listing Petitions and the Service's Responses**

32.    In August 2024, the Service received the Center's petition to list the Alvord chub as a threatened or endangered species under the ESA. 91 Fed. Reg. 3096, 3098 (Jan. 26, 2026). The Service found the Center's petition to list the chub may be warranted. *Id.* Specifically, the Service found that impacts from water withdrawals and diversions on the chub's habitat may warrant listing the Alvord chub. *Id.* The Service also found that the Center's petition presented information suggesting that livestock grazing, geothermal energy development, impoundments, predation and competition with nonnative species, climate change, impacts associated with small and fragmented populations, and inadequacy of existing regulatory mechanisms may be threats to the Alvord chub. *Id.* Because the Service found that the Center's petition may be warranted,

PAGE 9  –  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the 12-month finding was due in August 2025—one year after receipt of the Center's petition. *See* 16 U.S.C. § 1533(b)(3)(B). Therefore, the 12-month finding for the Alvord chub is past due.

33.    In March 2024, the Service received the Center's petition to list the cinnamon juga as a threatened or endangered species under the ESA. 90 Fed. Reg. 41359, 41362 (Aug. 25, 2025). The Service found the Center's petition to list the cinnamon juga may be warranted. *Id.* Specifically, the Service found that decreased water quality in the cinnamon juga's habitat may warrant listing the cinnamon juga. *Id.* The Service also found that the Center's petition presented information suggesting water diversions, low dispersal ability, low number of sites, climate change, and wildfire may be threats to the cinnamon juga. *Id.* Because the Service found that the Center's petition may be warranted, the 12-month finding was due in March 2025—one year after receipt of the Center's petition. *See* 16 U.S.C. § 1533(b)(3)(B). Therefore, the 12-month finding for the cinnamon juga is past due.

34.    In March 2024, the Service received the Center's petition to list the Great Basin ramshorn as a threatened or endangered species under the ESA. 90 Fed. Reg. 41359, 41362 (Aug. 25, 2025). The Service found the Center's petition to list the Great Basin ramshorn may be warranted. *Id.* at 41363–64. Specifically, the Service found that decreased water quality in the snail's habitat may warrant listing the Great Basin ramshorn. *Id.* The Service also found that the Center's petition presented information suggesting water diversions, low dispersal ability, low number of sites, climate change, and wildfire may be threats to the Great Basin ramshorn. *Id.* Because the Service found that the Center's petition may be warranted, the 12-month finding was due in March 2025—one year after receipt of the Center's petition. *See* 16 U.S.C. § 1533(b)(3)(B). Therefore, the 12-month finding for the Great Basin ramshorn is past due.

35.    In February 2024, the Service received the Center's petition to list the Donner und Blitzen pebblesnail as a threatened or endangered species under the ESA. 91 Fed. Reg. 3096, 3098 (Jan. 26, 2026). The Service found the Center's petition to list the Donner und Blitzen pebblesnail may be warranted. *Id.* Specifically, the Service found that impacts on the pebblesnail's habitat from groundwater depletion may warrant listing the Donner und Blitzen

PAGE 10  –   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

pebblesnail. *Id.* The Service also found that the Center's petition presented information suggesting that recreation, Bureau of Land Management activities, livestock grazing, climate change, drought, wildfire, water quality degradation, and invasive species may be threats to the pebblesnail. *Id.* Because the Service found that the Center's petition may be warranted, the 12-month finding was due in February 2025—one year after receipt of the Center's petition. *See* 16 U.S.C. § 1533(b)(3)(B). Therefore, the 12-month finding for the Donner und Blitzen pebblesnail is past due.

36.     In August 2024, the Service received the Center's petition to list the banded juga as a threatened or endangered species under the ESA. The Service has not issued a 90-day finding on the Center's petition and the deadline passed in August 2025. *See Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1176 (9th Cir. 2002) (holding that both a 90-day finding and 12-month finding must be made within one year of receipt of a listing petition). The Service's failure to publish a timely 90-day finding on the Center's petition has also led to a delay in the Service's statutorily required 12-month finding. *See* 16 U.S.C. § 1533(b)(3)(B). Thus, the Service's 90-day finding on the Center's petition to list the banded juga is past due.

37.     The Center provided Defendants with 60-days' notice of the ESA violations, as required by 16 U.S.C. § 1540(g)(2)(A), by letters to the Service dated September 15, 2025 (banded juga), November 13, 2025 (cinnamon juga and Great Basin ramshorn), and February 18, 2026 (Alvord chub and Donner und Blitzen pebblesnail). Defendants have not remedied the violations set out in these notices and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

## CLAIMS FOR RELIEF

### Violations of the ESA for Failure to Publish Timely 12-Month Findings for the Alvord Chub, Cinnamon Juga, Great Basin Ramshorn, and Donner und Blitzen Pebblesnail

38.     The Center re-alleges and incorporates all allegations set forth in the preceding paragraphs.

PAGE 11  –   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

39. After the Service receives a petition to list a species under the ESA and the Service makes a 90-day finding that such listing may be warranted, the ESA requires the Service to publish a listing determination within 12 months of the date on which it received the petition. *See* 16 U.S.C. § 1533(b)(3)(B). Defendants failed to perform their nondiscretionary duty to publish timely 12-month findings for the Alvord chub, cinnamon juga, Great Basin ramshorn, and Donner und Blitzen pebblesnail, in violation of the ESA. *See id.*

**Violation of the ESA for Failure to Publish a Timely 90-Day Finding for the Banded Juga**

40. The Center re-alleges and incorporates all allegations set forth in the preceding paragraphs.

41. After the Service receives a petition to list a species under the ESA, the Service must publish an initial finding within 90 days of receipt of the petition "to the maximum extent practicable," but in no case after more than one year. *See id.* § 1533(b)(3)(A); *Biodiversity Legal Found.*, 309 F.3d at 1176. Defendants failed to perform their nondiscretionary duty to publish a 90-day finding for the banded juga, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(A).

## REQUEST FOR RELIEF

WHEREFORE, the Center respectfully requests that the Court enter judgment providing the following relief:

1. Declare that Defendants violated the ESA by: (1) failing to issue timely 12-month findings in response to the Center's petitions to list the Alvord chub, cinnamon juga, Great Basin ramshorn, and Donner und Blitzen pebblesnail; and (2) failing to issue a timely 90-day finding in response to the Center's petition to list the banded juga;

2. Provide injunctive relief compelling Defendants to issue the four 12-month findings and the 90-day finding by a date certain;

3. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

PAGE 12  –  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

5.  Provide such other relief as the Court deems just and proper.


Respectfully submitted and dated this 16th day of July 2026.

/s/ Andrew Baloga
Andrew Baloga (OR Bar. No 245343)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6402
dbaloga@biologicaldiversity.org

/s/ Camila Cossío
Camila Cossío (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6427
ccossio@biologicaldiversity.org


*Attorneys for the Center for Biological Diversity*